Baughn's Appliance, Inc. v. Commissioner.
Baughn's Appliance, Inc. v. Commissioner
Docket No. 69184.
United States Tax Court
T.C. Memo 1960-80; 1960 Tax Ct. Memo LEXIS 210; 19 T.C.M. (CCH) 424; T.C.M. (RIA) 60080; April 25, 1960
*210 Petitioner, a corporation, took a miscellaneous expense deduction made up of a contracts receivable adjustment, an accounts receivable adjustment, and a cash adjustment, in computing its net taxable income for the taxable year. Where petitioner gave no explanation of the adjustments, could not locate the source of the discrepancies necessitating the adjustments, did not show that the amounts were actually either real business expenses or reflected business transactions with petitioner's customers, and offered no explanation other than that the adjustments were accepted accounting procedure, held, petitioner did not sustain its burden of proof and the respondent's action is approved. Benjamin H. Flesher, Esq., 219 East Compton Boulevard, Compton, Calif., for the petitioner. Marion Malone, Esq., for the respondent. *211 VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: Respondent determined a deficiency in petitioner's income tax for the taxable year ended September 30, 1954, in the amount of $1,902.29. The deficiency was based in part on the disallowance of deductions based on the following accounting adjustments to petitioner's net income: Accounts receivable adjustment
$1,300.30
Contracts receivable adjustment
1,597.66
Cash adjustment
1,616.07
Total
$4,514.03
The parties have agreed upon certain minor adjustments and the petitioner has signed a consent for the assessment and collection of $548.08 of the amount in dispute. The sole issue is whether the adjustments are proper deductions under the provisions of section 23 of the Internal Revenue Code of 1939. The parties, on brief, raise a secondary issue of whether the adjustments were, in the words of the statute, "incurred during the taxable year" in which they were taken as a deduction. Petitioner, Baughn's Appliance, Inc., hereinafter sometimes referred to as the corporation, was organized under the laws of the State of California on December 1, 1949. At the date this proceeding was commenced, petitioner's *212 business address was Santa Ana, California. The income tax return for the corporation was filed with the district director of internal revenue at Los Angeles, California. Petitioner maintained its books and records for the fiscal year in question on an accrual basis of accounting. The corporation's principal trade or business during the taxable year was the retail sale of household appliances through branch or retail stores located in cities in southern California. The accounting firm of Flesher, Flesher & Flesher, hereinafter sometimes referred to as Flesher, was retained sometime in April 1954 as the corporation's accountants. The books of the corporation up to March 1954 were kept by a different accountant. Lillian Williams, hereinafter sometimes referred to as Lillian, was petitioner's bookkeeper during the period here in question. Lillian lacked skill and experience in keeping books, and for that reason her activities were restricted. Her bookkeeping up to approximately April 1954 was confined chiefly to taking care of the accounts receivable and contracts receivable accounts. Part of Lillian's duties was the preparation of monthly reports. Reports were prepared by her *213 for May and September 1954. The May report summarized contracts receivable and accounts payable and set forth final totals for these accounts but gave only totals, without details, for the following accounts: Accounts receivable, deposits on merchandise, and delivery charges. The September report set forth similar information, but included a summarization and total for inventory. The information found in these reports was taken, in part, from sales invoices. Petitioner had no method by which it could be determined by the bookkeeper whether all the sales invoices were in hand for the preparation of the reports. Originally, Lillian did not keep the journals or other general books of account because she lacked the requisite skill. However, she began making entries in the journals approximately May 1, 1954, and she did so regularly thereafter. Lillian did no posting to the general ledgers at any time. Flesher was detailed on other accounting jobs between June and October and did not keep petitioner's books currently on a month-to-month basis. Flesher returned to petitioner's books in October in order to close them out for the fiscal year October 1, 1953 to September 30, 1954. The *214 totals for the accounts in issue here, i.e., accounts receivable, contracts receivable, and cash, as shown in the general ledgers, were not in balance as of September 30 with the totals for those accounts in the detailed or subsidiary records. The September report prepared by Lillian was used, where applicable, in making the comparison with the general ledgers. The totals shown in the subsidiary records and reflected in part in the September report were accepted as correct. Accordingly, the following adjustments were made on the September work sheet: Adjustment 1: Trial Balance
Profit and Loss
Dr.
Cr.
Dr.
Cr.
Accounts receivable adjustment
$1,300.30
$1,300.30
account
The final totals in the general ledgers as of September 30, for accounts receivable, actually balanced with the figures set forth in the September report, which totals were the debit entries made in the trial balance column on the work sheet. The final balances under the balance sheet column on the work sheet reflected certain credit entries to accounts receivable and debit entries to bad accounts. Adjustment 2: Trial
Adjustments
Profit and
Balance
Loss
Dr.
Cr.
Dr.
Cr.
Dr.
Cr.
Contracts receivable adjustments
$466.73
$2,064.39
$1,597.66
account
*215 This result was achieved by the following entries into the adjustments column: Adjustments
Dr.
Cr.
Contracts receivable: Glendale
$ 84.79 (8)
Kay's
11,549.06 (8)
Lorraine
$4,369.00 (8)
A & S
5,243.24 (8)
Sepulveda
4,086.00 (8)
Contracts receivable
adjustment ac-
count
2,064.39 (8)
These adjustments were numbered "(8)." Petitioner's journals listed a "sales return and allowances" or equivalent account. Various entries, which in effect reversed various sales, were shown in this account, but the exact date of these entries is not known to this Court. Adjustment 3: Trial Balance
Adjustments
Profit and
Loss
Dr.
Cr.
Dr.
Cr.
Dr.
Cr.
Cash adjustment account
$1,383.93
$3,000
$1,616.07
This result was achieved by the following entries into the adjustments column: Adjustments
Dr.
Cr.
Accounts receivable
adjustment - Mrs.
Jensen
$ 50.00 (4)
Expense Sepulveda
31.14 (4)
Cash account adjust-
ment
3,000.00 (4)
B of A Sepulveda
$3,081.14 (4)
The purpose of the adjustments was to align the totals shown in the general ledgers *216 with those shown in the subsidiary records. Accounting procedure required that adjustments, whichever form was used, be made to balance the books. The totals finally entered under the balance sheet column on the September work sheet for the accounts in issue balanced, after the adjustments, with the subsidiary records and general ledgers. The adjustment figures were totalled and deducted for income tax purposes as miscellaneous expenses. The branches or retail stores performed only limited bookkeeping functions. The store managers recorded only cash receipts and disbursements. These records were mailed periodically to the corporation's main office by each manager. Records dating from April through September 1954 indicated cash expenditures of $1,448.95. The records for the period April to September indicated that the cash disbursements were probably for office expenses and supplies, service and freight charges, and delivery charges. The petitioner's journals had regular accounts for these expenses. Similar records were prepared for the months prior to April 1954, and these expenditures were posted to the journals. The revenue agent who was assigned to investigate petitioner's *217 tax return attempted unsuccessfully to reconcile the return with the books and records presented to him by petitioner. He requested, but did not receive, an analysis of the adjustments. Working with Lillian and Flesher, the agent was unsuccessful in his attempt to locate the causes of the discrepancies. The sole issue is whether, under the above facts, the accounts receivable adjustment, contracts receivable adjustment, and cash adjustment were properly deducted by petitioner as business expenses or losses incurred in petitioner's business. The issue is one essentially of fact. The burden of proof rests upon the petitioner. The facts set out above are based on the confused and confusing oral testimony of petitioner's accountants and former bookkeeper, and certain documentary evidence introduced by petitioner at the trial. While the pertinent facts are the type which would usually be determined from written instruments and records, not all the relevant documents were introduced in evidence or otherwise accounted for at the trial. Petitioner's efforts seemed to be directed toward proving that the adjustments made were accepted accounting practice. This, however, is not the issue *218 before us. Petitioner's burden was to show that the separate adjustments comprising the miscellaneous deduction actually reflected either expenses or losses of the business, or the true character of petitioner's transactions with its customers. Indicating only what accounting steps were taken did not meet this burden. In the process of closing out petitioner's books for the fiscal year in question, Flesher discovered that the totals for the accounts in issue here, as found in the general ledgers, were not in balance with the totals for those accounts in the detailed or subsidiary ledgers. Without investigation or verification, Flesher accepted as correct the figures in the subsidiary records, which were reflected, in part, in the September report. Accordingly, the adjustments outlined above were made. No explanation of these adjustments was given in the testimony and no explanation was found in any of the documents submitted in evidence. When the adjustments are challenged, the mere entry of adjustment figures, without more appearing, does not suffice to explain the sources of or reasons for the adjustments. Nor are we convinced that the figures appearing in the September report, *219 to the extent used for the comparison, accurately reflected the business transactions of petitioner. The September report, like the May report, was prepared in part by Lillian from sales invoices. She admits she did not know whether all the invoices were present when she made up the report, and further admitted that she had no method of checking whether all the invoices were in her hands. Petitioner's counsel went to great lengths to show that Lillian was inexperienced and inexpert in the art of bookkeeping, and we agree. Adequate support for this fact is found in the testimony, and petitioner relies on it in its brief. But petitioner, in the same breath, would have us place complete reliance upon Lillian's ability to prepare accurately the monthly reports. Our doubts as to the reliability of these reports is further confirmed by the fact that Lillian did not understand the purpose and importance of the monthly reports and, by her own admission, from time to time made errors in her figures. No real investigation was made into the accuracy of the September report, nor was any examination of the general ledger totals undertaken by petitioner's accountants. It was admitted by one *220 of petitioner's accountants that the source of the discrepancy could have been mathematical or due to other errors in the subsidiary ledgers, or in the September report itself. In short, no investigation was made to find the source of the discrepancies. We are not impressed with petitioner's reason for not having made any investigation. A discrepancy of $4,514.03 is not too small and insignificant an amount, when compared to a net taxable income of $8,778.45, to warrant an investigation on the part of petitioner's accountants. Without any explanation, petitioner might be taking, for all that appears in the record, an expense deduction for an amount created by an error in posting or in faulty addition. Petitioner sought to explain in part the cash adjustment by showing that $1,448.95, disbursed by the branch stores, was not posted to petitioner's journals. These disbursements appeared on the cash receipts and disbursements records prepared by the store managers and allegedly reflected expenditures for such items as office expense and supplies, and service and freight charges. The testimony with respect to whether these expenditures were ever posted is sharply conflicting. As *221 indicated in the above findings, Lillian began making entries into the journals in May 1954, and did so regularly thereafter. Her own testimony with respect to these expenses was neither positive nor persuasive. In some instances she testified that she could not recall whether she did or did not make any entries with respect to these cash disbursements. In other places in her testimony she guessed that she did not post the expenditures, and at still other times she testified that she recalled doing something with them. On the other hand, one of petitioner's accountants testified that he could find no evidence that the disbursements had been posted. Testimony such as this does not serve as an explanation of the source of the cash discrepancy. Furthermore, petitioner has not shown, beyond some account names on the store records, that the cash was expended for business purposes. No sales receipts, cash or petty cash vouchers, cash register receipts, or other invoices were introduced in evidence to show to what purpose the cash was actually expended. No testimony was given by the store employees or others charged with making petitioner's purchases that the cash in fact was expended *222 for business purposes. One of petitioner's accountants admitted that the cash might have been taken by some of petitioner's employees or could well have been used for nonbusiness expense purposes. This observation was supported by the testimony of the revenue agent. When an expense deduction is challenged, as the cash adjustment is, petitioner must adduce something more in the way of evidence than a naked assertion that the money was expended for business purposes. Considering all the factors discussed and the facts set forth above, it is clear that petitioner has not shown that the cash adjustments reflected expenditures for business purposes. Nor has petitioner shown that the adjustments to accounts receivable and contracts receivable were necessitated by actual transactions in the daily operations of petitioner's business. Petitioner has, in fact, made no explanation at all. As noted above, these adjustments were not explained either on the September work sheet or in the testimony. No sales invoices for the period in question showing a sales return which, for whatever reason, was not recorded in the books, were introduced. Accounting entries are some evidence of the transactions *223 which they record, but when the entries are contested, as the adjustments in this case are, petitioner must show more, viz., evidence indicating that the transactions had substance in fact. In the light of these considerations and our findings of fact, we hold that petitioner has failed to carry the burden necessary to show that the adjustments were allowable deductions. We need observe only that deductions are a matter of legislative grace, and the taxpayer must point to, and prove his right to deduction under, some provision of the Code concerned with business deductions. New Colonial Co. v. Helvering, 292 U.S. 435. This, petitioner has failed to do. Having found that the deductions were not properly supported by proof, we need not discuss the issue of whether the adjustments should have been deducted in the taxable year in issue or in a prior taxable period. Decision will be entered under Rule 50.